# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | |
|---|---|
| **In the Matter of the Search of** ) | |
| IN THE MATTER OF AN APPLICATION OF THE UNITED ) | No. 4:23 MJ 8130 SRW |
| STATES OF AMERICA FOR A WARRANT TO OBTAIN ) | |
| LOCATION INFORMATION, INCLUDING PRECISION ) | **FILED UNDER SEAL** |
| LOCATION INFORMATION; SUBSCRIBER AND | |
| TRANSACTIONAL RECORDS; CELL SITE INFORMATION; | |
| AND FOR A PEN REGISTER AND TRAP AND TRACE DEVICES | SIGNED AND SUBMITTED TO THE COURT FOR FILING BY |
| FOR PHONE NUMBER (314) 303-8034. | RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A SEARCH WARRANT

I, __Brock Gale__, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

### See Attachment A

located in the _____ District of __New Jersey__, there is now concealed

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- xx   evidence of a crime;
- xx   contraband, fruits of crime, or other items illegally possessed;
- xx   property designed for use, intended for use, or used in committing a crime;
-      a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title   Section | |

Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm); 922(d) (knowingly giving a firearm to a felon); 922(k) (knowingly possessing/manufacturing a short-barreled rifle); and 932 (knowingly purchasing or conspiring to purchase any firearm for a prohibited person)

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

- ✓   Continued on the attached sheet.
- ❏   Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

**BROCK GALE**   Digitally signed by BROCK GALE
Date: 2023.05.18 16:21:43 -05'00'

*Applicant's signature*

Brock Gale, SA, ATF
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date:   __May 19, 2023__   _____

*Judge's signature*

City and State:   __St. Louis, Missouri__   Honorable Stephen R. Welby, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Jennifer Szczucinski

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )          No. 4:23 MJ 8130 SRW
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION;        **FILED UNDER SEAL**
SUBSCRIBER AND TRANSACTIONAL
RECORDS; CELL SITE INFORMATION;      SIGNED AND SUBMITTED TO THE COURT FOR
AND FOR A PEN REGISTER AND TRAP      FILING BY RELIABLE ELECTRONIC MEANS
AND TRACE DEVICES FOR PHONE
NUMBER (314) 303-8034.

## APPLICATION BY ATTORNEY FOR THE UNITED STATES

COMES NOW the United States of America, by and through its attorneys, the United

States Attorney for the Eastern District of Missouri, and Jennifer Szczucinski, Assistant United

States Attorney for said District, and hereby makes application to this Court for a warrant and

order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) & B, (c)(2), 3123 and

Federal Rule of Criminal Procedure 41, authorizing agents/officers of the Bureau of Alcohol,

Tobacco, Firearms and Explosives (hereinafter referred to as the "investigative agency"), and other

authorized federal/state/local law enforcement agencies, to obtain records and location

information, including precision location information, cell site location information, and other

signaling information, associated with the cellular telephone (314) 303-8034, identified in

Attachment A to the requested Warrant and Order (hereinafter "subject cellular telephone #2").

## INTRODUCTION AND RELIEF REQUESTED

1.      The present application requests relief in three forms. First, the application requests

the disclosure of information about the location of the subject cellular telephone described in

Attachment A to the requested Warrant and Order, including GPS or E-911 information. Second,

1

the application requests transactional and subscriber records and cell site information, which does not include precision location information, associated with the subject cellular telephone. Third, the application requests authorization for the installation and use of pen register and trap and trace devices. In making this application, the United States does not seek the contents of any communication.

2.     The subject cellular telephone is serviced by Verizon (hereinafter referred to as "the Provider"). The records and information requested herein may include information related to when the subject cellular telephone is located in a protected space, such as a residence.

3.     The Provider is an electronic communications service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A).

4.     Based on the facts as set forth in the attached affidavit, there is probable cause to believe that the subject cellular telephone is currently being used in connection with violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm); 922(d) (knowingly giving a firearm to a felon); 922(k) (knowingly possessing/manufacturing a short-barreled rifle); and 932 (knowingly purchasing or conspiring to purchase any firearm for a prohibited person) committed by **DENNIS LATOUR** and **JENNIFER KEEGAN** and others known and unknown.

5.     The United States makes this application upon a showing of probable cause. Incorporated by reference as if fully set out herein is the affidavit of Special Agent Brock Gale, Bureau of Alcohol, Tobacco, Firearms and Explosives, which alleges facts in order to show that there is probable cause to believe that evidence of the commission of the above-described subject offenses and the location of the subject person can be obtained by locating and monitoring the

2

location of the subject cellular telephone, without geographic limitation within the United States, including by obtaining precision location information (*e.g.*, GPS and E-911 information), subscriber and transactional data, cell site information, and signaling information from pen register and trap and trace devices concerning the subject cellular telephone, as described in Attachment B to the requested Warrant and Order.

6.      The applicant and undersigned Assistant United States Attorney is an "attorney for the United States" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested Warrant and Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PRECISION LOCATION INFORMATION REQUEST

8.      The United States requests a warrant directing the Provider, and/or any service provider(s) reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide all information about the location of the subject cellular telephone, as described in Part I of Attachment B to the requested Warrant and Order, during all times of day and night.

9.      "Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific

geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the subject cellular telephone described in Attachment A to the requested Warrant and Order.

## TRANSACTION RECORDS AND CELL SITE LOCATION INFORMATION REQUEST

10.     The United States further requests a warrant directing the Provider, and/or any service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to provide certain telecommunication records and information, including transactional and subscriber data and cell site location information, but not the contents of any communication, as described in Part II of Attachment B to the requested Warrant and Order.

11.     A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d). Accordingly, the Affidavit attached to this application and incorporated herein, sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment B to the requested Warrant and Order are relevant and material to an ongoing criminal investigation.

## PEN REGISTER, TRAP AND TRACE REQUEST

12.     This is an application made, in part, under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen register and trap and trace devices on the Provider and any other applicable service providers reflected in Attachment A to the requested Warrant and Order.

13.    Such an application must include three elements: (1) "the identity of the attorney for the United States or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b). These elements have been established previously in this Application.

14.    A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

15.    In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

16.    A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas. In order to transmit or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

17.    In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded

5

unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

18.    A cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents. Cellular phones can connect to the Internet via the cellular network. When connecting through the cellular network, Internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these

6

unique identifiers can be used to identify parties to a communication without revealing the communication's contents. These telephone numbers can include "post-cut-through dialed digits," which are numbers dialed from the cell phone after the initial call set up is completed. For example, some post-cut-through dialed digits may be the actual telephone number called, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. In the event that the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the United States' use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

19.    As previously outlined, the United States certifies that the information likely to be obtained through the aforesaid pen register and trap and trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

20.    For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the subject cellular telephone described in Attachment A, to include the date, time, and duration of the communication, as described in Part III of Attachment B. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

21.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order the Provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with a minimum of disruption to normal service.

22.     The United States further requests that the Court order the Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the investigative agency of any changes relating to the cell phone number described in Attachment A to the requested Warrant and Order, and to provide prior notice to the applicant and the investigative agency before terminating or changing service to the phone number.

23.     The United States further requests that the Court order that the investigative agency and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, and at reasonable intervals and at such other times as may be acceptable to them, for the duration of the Warrant and Order.

24.     The United States further requests that the Court order that should the telephone and/or ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI number listed in Attachment A to the requested Warrant and Order be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen register and trap and trace devices remain in effect for any new telephone to which the subject cellular telephone listed above is changed, throughout the effective period of such Order.

25.     The United States further requests that the Provider and/or any entity providing such assistance shall be reasonably compensated by the investigative agency pursuant to 18 U.S.C.

§ 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

## MISCELLANEOUS CONSIDERATIONS

26.     Pursuant to Title 18, United States Code, Section 2703(c)(3), the United States entity or agency receiving these records or information as a result of this application and accompanying warrant and order will not provide notice to the subscriber or customer of the subject cellular telephone.

27.     Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703. The information requested herein does not require a physical intrusion or physical trespass into any protected space. Accordingly, it is respectfully requested that the warrant authorize the investigative agency, and other authorized federal/state/local law enforcement agencies, to obtain the information described herein at any time, day or night.

28.     The United States further requests that the Order direct that the investigative agency provide the telecommunication providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

29.     Based on the forgoing, I request that the Court issue the requested search warrant. The United States will execute this warrant by serving the warrant on telecommunication providers reflected in Attachment A to the requested Warrant and Order. Because the warrant will be served on telecommunication providers reflected in Attachment A to the requested Warrant and Order,

who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30.    In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation, including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit, which is attached hereto and incorporated herein, the applicant requests that this Court issue a Warrant authorizing agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the subject cellular telephone.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this  19th   day of May, 2023.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*s/Jennifer Szczucinski*
JENNIFER SZCZUCINSKI, #56906MO
Assistant United States Attorney

10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION;
SUBSCRIBER AND TRANSACTIONAL
RECORDS; CELL SITE INFORMATION;
AND FOR A PEN REGISTER AND TRAP
AND TRACE DEVICES FOR PHONE
NUMBER (314) 303-8034.

No. 4:23 MJ 8130 SRW

**FILED UNDER SEAL**

SIGNED AND SUBMITTED TO THE COURT FOR
FILING BY RELIABLE ELECTRONIC MEANS

## AFFIDAVIT

I, Brock Gale, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a warrant and order pursuant

to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated

with a cellular telephone **(**314) 600-6551 (hereinafter referred to as "subject cellular telephone

#2") to require Verizon (hereinafter "the Provider"), and/or any service providers reflected in

Attachment A, to include providers of any type of wire and/or electronic communications, and any

other applicable service providers, to disclose to the United States location information, including

precision location information, transactional and subscriber data and cell site location information,

and the installation and use of other pen register and trap and trace devices associated with the

subject cellular telephone**,** as described in Attachment B to the requested warrant and order.

2.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), and have been since January 2018. I am currently assigned to the Kansas City

Field Division, St. Louis Group IV Field Office. I am tasked with investigating violations of the

1

federal arson, explosives, controlled substances, violent crime and firearms laws, among others. I have successfully completed the Criminal Investigator Training Program (CITP) and the ATF National Academy Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center. Prior to ATF I was employed as a Police Officer for the City of Bridgeton for over six years. During my tenure with the ATF, I have participated in numerous investigations, to include burglaries of gun stores, straw purchases, and illegal firearm possession. I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the subject cellular telephone.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that **subject cellular telephone #2** is currently being used in connection with violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession

2

of a firearm); 922(d) (knowingly giving a firearm to a felon); 922(k) (knowingly possessing/manufacturing a short-barreled rifle); and 932 (knowingly purchasing or conspiring to purchase any firearm for a prohibited person) (hereinafter referred to as "the subject offenses"), by **DENNIS LATOUR** and **JENNIFER KEEGAN**, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### BACKGROUND CONCERNING WIRELESS PROVIDERS

6.    Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.    Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b.    Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used

3

to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

      c.     Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

      d.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.      Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

g.      In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agency, and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of

5

the United States. The investigative agency, and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

7.     The United States, including ATF, is conducting a criminal investigation of JENNIFER KEEGAN and convicted felon DENNIS LATOUR regarding the commission of the subject offenses. From February of 2023 to May of 2023, SA Gale has been investigating the suspected straw purchasing and attempted straw purchasing of approximately 20 firearms purchased by KEEGAN and LATOUR from 5 different locations.

8.     LATOUR is a convicted felon, having prior convictions for: Case No. 4:12-CR-00231 CDP - Bank Fraud, Identity Theft, and Wire Fraud; Case Number 4:15-CR-241 RLW-6 - Conspiracy to Launder Money and Money Laundering; Case No. 11SL-CR04774-01 - Unlawful Merchandise Practice and Passing a Bad Check; Case No. 12SL-CR00047-01 - Stealing over $25,000, and additional stealing/theft convictions prior to 2010.

9.     On February 24, 2023, an online order was placed through www.gunprime.com for a Barrett, model M82A1, .50 caliber rifle, two boxes of 10 rounds of .50 BMG caliber ammunition and one Barrett, model M82A1 10 round magazine. The credit card provided was XXXX-XXXX-XXXX-2055 with name "Jennifer Keegan." The original name on the online order was Dennis Latour, however LATOUR then called gunprime.com from telephone number (314) 600-6551

(**subject cellular telephone #1**) and advised he wished to switch the name on the order to KEEGAN. Additionally, LATOUR requested overnight delivery and agreed to pay the $300.00 fee. The information listed on the invoice was:

> Jennifer Keegan
> 12429 Nicholas Ln.,
> Saint Louis, MO 63131
> United States
> 3146006551 (**subject cellular telephone #1**)
> limitlessholdingsllc@gmail.com

10.    The representative at gunprime.com advised due to the price of the order they declined the transaction and advised LATOUR the transaction would only be completed if a certified check was delivered. Employees performed an online public records inquiry and learned LATOUR was likely a felon.

11.    In March of 2023, after being denied the firearm transaction by gunprime.com, LATOUR contacted the owner (J.S.) of JS Gunworks, a Federal Firearms Licensee, utilizing **subject cellular telephone #1**. JS Gunworks is located at 3697 Broad St., Saint Charles, MO 63301. LATOUR informed J.S. of the denied firearms transaction and asked J.S. to complete the order through gunprime.com. LATOUR advised J.S. that gunprime.com would not complete the order if anyone involved in the denied transaction was involved with attempting to purchase the Barret, .50 caliber rifle. LATOUR sent J.S. a screenshot of the invoice from gunprime.com and the cancelled payment message from gunprime.com to LATOUR. The screenshot appears to be from a cellular phone, and displays a response from what appears to be LATOUR after the payment was voided stating, "Are you kidding us? So if we mail a check you hold it for 10 days and we."

12.    At LATOUR's request, J.S. purchased the firearm from gunprime.com, to be shipped to J.S. and transferred to LATOUR and KEEGAN upon its arrival.

13.     On March 1, 2023, KEEGAN and LATOUR arrived at JS Gunworks and purchased the Barrett, 82A1-CQ, .50 BMG caliber rifle, and an Aero Precision, X15, multi caliber rifle with cash. KEEGAN completed the Firearms Transaction Record (ATF Form 4473). After this purchase, via the **subject cellular telephone #1,** LATOUR sent J.S. photos of the Barrett rifle and inquired if the scope was mounted properly. The photos show the Barrett rifle sitting on a table with various tools, in what appears to be a large garage/airplane hangar. In one of the photos, the tag is still affixed to the rifle, with the serial number clearly visible.



*Barrett, 82A1-CQ, .50 BMG caliber rifle, SN: AA014535*

14.     J.S. advised he first met KEEGAN and LATOUR at a gun show on December 10, 2022. KEEGAN completed ATF Form 4473 and purchased a JS Gunworks JSG-15, .50 Beowulf caliber rifle and a second firearm from J.S.'s private collection, which was not documented on the Form 4473. KEEGAN used cash to purchase the firearms. J.S. recalled both KEEGAN and LATOUR discussing buying firearms from other dealers and observed LATOUR and KEEGAN both carrying items out of the gun show.



*JS Gunworks JSG-15, .50 Beowulf caliber rifle purchased by KEEGAN/LATOUR*



*Red and black rifle purchased by KEEGAN/LATOUR. Pistol in above picture is not relevant.*

15.    After this first purchase, J.S. would routinely exchange text messages and phone calls with LATOUR via **subject cellular telephone #1**. J.S. advised he and LATOUR discussed various things, including building custom firearms. During these conversations, J.S. agreed to build a custom firearm for LATOUR. On February 24, 2023, LATOUR and KEEGAN arrived at JS Gunworks. KEEGAN completed Form 4473 and purchased the firearm with cash. The firearm is described as a JS Gunworks, JSG-15, 5.56 caliber rifle, with a Fightlite upper receiver which is capable of firing belt fed or magazine fed.

9



16.     During conversations with LATOUR, LATOUR mentioned he was a pilot and works or has an office at Creve Coeur or Chesterfield Airport. J.S. stated LATOUR and KEEGAN are always together and believes they are married. All of the transactions completed with LATOUR and KEEGAN have been cash transactions.

17.     On March 4, 2023, KEEGAN and LATOUR went to Bass Pro Shop, located at 1365 South 5th St., Saint Charles, MO 63301, within the Eastern District of Missouri. While at Bass Pro, KEEGAN completed ATF Form 4473 and purchased a Umarex/HK Inc., MP5, .22 caliber rifle and a Riley Defense, RAK-47, 7.62x39mm caliber rifle.

18.     SA Gale seized and reviewed a copy of the surveillance video. For the majority of the transaction KEEGAN stood at the firearm counter handling the transaction. LATOUR meandered about and occasionally stood next to KEEGAN. LATOUR engaged in conversation with the store employee and inspected the firearms being purchased by KEEGAN. At one point during the video, an employee handed LATOUR what appears to be a long rifle from the display wall. LATOUR handled the suspected firearm for a brief period and returned it to the employee. Prior to LATOUR exiting the store, LATOUR made a purchase for a Magpul rail light mount,

which is designed to secure a light to a firearm. LATOUR and KEEGAN exited the store, each of them holding a firearm.

19.     On March 21, 2023, KEEGAN and LATOUR went to Bass Pro Shops Outdoor World, located at 1 Bass Pro Drive, Springfield, MO 65807. KEEGAN completed ATF Form 4473 and purchased five firearms: Kimber, Micro 9 Rapide, 9mm luger caliber pistol, Heckler & Koch, Inc., MR762 A1, 7.62 caliber rifle, Kimber, Aegis Elite Custom, 9mm luger caliber pistol, Christensen Arms, CA-10 G2, 6.5 mm Creedmoor caliber, Derya Arms / AP INTL, VR80, 12 gauge caliber shotgun.

20.     SA Gale seized and reviewed a copy of the surveillance video which showed the following:

21.     KEEGAN and LATOUR arrived at Bass Pro together, in a black Alpha Romeo SUV with LATOUR driving.

22.     KEEGAN and LATOUR entered the Fine Gun Room and perused items. While KEEGAN was on one side of the room, LATOUR made contact with an employee and pointed to firearms within a case. The employee handed LATOUR multiple different firearms, which LATOUR manipulated and then returned to the employee.

23.     Thereafter, KEEGAN and LATOUR went to the firearms counter for over an hour. During this time period LATOUR engaged in conversation with an employee working behind the counter. LATOUR handled approximately twelve different firearms, usually outside KEEGAN's presence. At one point, LATOUR had two AR-style rifles on the counter; LATOUR utilized a cellular phone while examining the firearms and showed the screen of his phone to the employee. Once KEEGAN returned to LATOUR's side, she never touched the firearms. Ultimately,

LATOUR gestured toward the firearms, then the employee took the firearms to an area where KEEGAN and LATOUR would eventually complete the transaction for all five firearms.



*LATOUR utilizing his cell phone while handling two firearms.*

24.    On March 22, 2023, KEEGAN went to Eagle Armory, located at 1908 E Chestnut Expy, Springfield, MO 65802. KEEGAN completed ATF Form 4473 and purchased a Heckler & Koch / HK Inc., SP5, 9mm caliber pistol. Employees recalled KEEGAN being accompanied by a male, however surveillance video was not obtainable.

25.    On April 4, 2023, KEEGAN and LATOUR went to Midwest Gun Works Inc., located at 1101 Mason Circle Dr. S, Pevely, MO 63070. KEEGAN completed ATF Form 4473 and purchased the following three firearms: IWI, Tavor X95 XB18, 5.56 caliber rifle, Kriss USA, Vector SDP G23, 10mm caliber pistol, and a Fightlite, SCR, multi caliber pistol. The firearms were made via three separate online orders. The following purchaser information was provided as part of the online orders:

        Jennifer Keegan
        12429 Nicholas Ln
        Saint Louis MO 63131-3625
        US
        3143038034 **(subject cellular telephone #2)**

26.    SA Gale reviewed the surveillance video and interviewed the Midwest Gun Works store manager and learned the following:

27.    LATOUR and KEEGAN arrived at the store together, with LATOUR driving a black/red Toyota FJ Cruiser with off road accessories.

28.    LATOUR entered the store carrying a black soft sided case and removed a silver pistol from the case. LATOUR then exchanged magazines that were purchased via an online sale to KEEGAN.



*(left) LATOUR holding what appears to be a Kimber, Micro 9mm pistol at Midwest Gunworks. (right) exemplar photo of a Kimber, Micro 9mm pistol from the Kimber website located at https://www.kimberamerica.com/micro-9-rapide-frost.*

29.    The store employee showed LATOUR and KEEGAN the three firearms and both KEEGAN and LATOUR inspected them. KEEGAN purchased additional items, including magazines and Kriss Vector folding stock. KEEGAN completed ATF Form 4473 and LATOUR handled the Kriss firearm and the Kriss Vector folding stock. LATOUR appeared to discuss attaching the stock to the firearm with the employee. KEEGAN showed no interest in the stock or how it attached to the firearm. LATOUR utilized a cellular phone to watch a video in reference to the firearm. Employees brought LATOUR a second stock which, LATOUR and the employee

13

manipulated with the firearm. Affixing the stock to the Kriss pistol, would convert this firearm into a short barreled rifle, in violation of Title 18, United States Code, Section 922(k).



*LATOUR removing the Kriss firearm from the case.*



*LATOUR utilizing a cellular phone.*

30.     During the interaction, LATOUR removed a credit/debit card from his wallet and gave it to the employee to pay for the difference owed as the new stock LATOUR selected was more expensive. The last four digits of the credit card utilized for all of the transactions at Midwest Gunworks was 2055. It should be noted the credit card originally utilized to attempt to purchase the Barrett, .50 caliber rifle from gunPrime.com was XXXX-XXXX-XXXX-2055.

14

31.     Relative to **subject telephone #1**, during the month of April 2023, SA Gale received subscriber information from Verizon. The subscribers listed on the account are LATOUR and Cassandra Weathers. The address listed is 12429 Nicholas Ln., Saint Louis, MO 63131. The business name associated to the account is Rent 3 Wheel LLC.

32.     The Missouri Secretary of State reflects Rent 3 Wheel LLC was created by LATOUR on February 16, 2018 and terminated on April 3, 2023, with an address of 1096 Mersey Bend Dr., St. Louis, MO 63129.

33.     On May 9, 2023, an online inquiry of **subject telephone #2** revealed the provider to be Verizon with the first associated name being "Jennifer Keegan."

34.     On May 9, 2023, an Ameren utilities check was performed on KEEGAN and LATOUR. The inquiry revealed KEEGAN has active utilities at 12429 Nicholas Ln., St. Louis, 63131 with associated telephone number (314) 303-8035 **(subject cellular telephone #2)** and active utilities at 1037 Nana Dr., St. Louis, MO 63131 with associated telephone number (309) 275-5106. LATOUR has no active utility accounts.

## CONCLUSION

35.     Based on the above information, your affiant submits that there is probable cause to believe that **subject cellular telephone #2** is currently being used in connection with the commission of the subject offenses, by **JENNIFER KEEGAN**, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

15

36.    None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency, and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

37.    The monitoring of the location of the subject cellular telephone by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

I state under the penalty of perjury that the foregoing is true and correct.

BROCK GALE

Digitally signed by
BROCK GALE
Date: 2023.05.18
16:21:56 -05'00'

_____
DATE

Brock Gale
Special Agent
ATF

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41, on May _____19_____, 2023

_____
The Honorable Stephen R. Welby
UNITED STATES MAGISTRATE JUDGE

16

# ATTACHMENT A

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

**I.      The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| VERIZON | (314) 303-8034 (subject cellular telephone #2) | Unknown | Jennifer Keegan Dennis Latour |

**II.     The Provider**

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of Verizon**,** and other applicable service providers reflected on the list contained in this Attachment A**,** including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

1

**LIST OF TELECOMMUNICATION SERVICE PROVIDERS**

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator Telecommunications | Start Wireless |
| Airvoice Wireless | Fibernit Comm | NE Nebraska Telephone | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | Netlink Comm | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Network Services | Talk America |
| Altice USA | Focal Communications | Neustar | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neutral Tandem | Telecorp Comm |
| AOL C | FuzeBox, Inc. | Nex-Tech Wireless | Telepak |
| orp. | Gabriel Comm | Nexus Communications | Telispire PCS |
| Arch Communication | Galaxy Paging | NII Comm | Telnet Worldwide |
| AT&T | Global Communications | North Central Telephone | Tex-Link Comm |
| AT&T Mobility | Global Eyes Communications | North State Comm | Time Warner Cable |
| Bell Aliant | Global Naps | Northcoast Communications | T-Mobile |
| Big River Telephone | Grafton Telephone Company | Novacom | Total Call International |
| Birch Telecom | Grand River | Ntera | Tracfone Wireless |
| Blackberry Corporation | Grande Comm | NTS Communications | Trinity International |
| Brivia Communications | Great Plains Telephone | Oklahoma City SMSA | U-Mobile |
| Broadview Networks | Harrisonville Telephone Co. | ONE Communications | United Telephone of MO |
| Broadvox Ltd. | Heartland Communications | ONSTAR | United Wireless |
| Budget Prepay | Hickory Telephone | Optel Texas Telecom | US Cellular |
| Bulls Eye Telecom | Huxley Communications | Orion Electronics | US Communications |
| Call Wave | iBasis | PacBell | US LEC |
| Cbeyond Inc. | IDT Corporation | PacWest Telecom | US Link |
| CCPR Services | Illinois Valley Cellular | PAETEC Communications | US West Communications |
| Cellco Partnership, | Insight Phone | Page Plus Communications | USA Mobility |
| d/b/a Verizon Wireless | Integra | Page Mart, Inc. | VarTec Telecommunications |
| Cellular One | Iowa Wireless | Page Net Paging | Verisign |
| Cellular South | IQ Telecom | Panhandle Telephone | Verizon Telephone Company |
| Centennial Communications | J2 Global Communications | Peerless Network | Verizon Wireless |
| CenturyLink | Leap Wireless International | Pineland Telephone | Viaero Wireless |
| Charter Communications | Level 3 Communications | | Virgin Mobile |
| Chickasaw Telephone | Locus Communications | | Vonage Holdings |
| Choctaw Telephone Company | Logix Communications | | Wabash Telephone |
| Cimco Comm | Longlines Wireless | | Wave2Wave Communications |
| Cincinnati Bell | | | Weblink Wireless |
| Cinergy Communications | | | Western Wireless |
| Clear World Communication | | | |
| Com-Cast Cable Comm. | | | |

2

| | | | |
|---|---|---|---|
| Commercial Communications | Los Angeles Cellular | PhoneTech | Westlink Communications |
| Consolidated Communications | Lunar Wireless | PhoneTel | WhatsApp |
| Cox Communications | Madison River Communications | Preferred Telephone | Windstream Communications |
| Cricket Wireless | Madison/Macoupin Telephone Company | Priority Communications | Wirefly |
| Custer Telephone Cooperative | Mankato Citizens Telephone | Puretalk | XFinity |
| DBS Communications | Map Mobile Comm | RCN Telecom | XO Communications |
| Delta Communications | Marathon Comm | RNK Telecom | Xspedius |
| Detroit Cellular | Mark Twain Rural | QWEST Communications | Yakdin Valley Telephone |
| Dobson Cellular | Max-Tel Communications | Sage Telecom | YMAX Communications |
| | Metro PCS | Seren Innovations | Ztel Communications [1] |
| | Metro Teleconnect | Shentel | |
| | | Sigecom LLC | |
| | | Sky Tel Paging | |
| | | Smart Beep Paging | |
| | | Smart City Telecom | |

---

[1] Last Update: 03/17/2019

3

**ATTACHMENT B**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

## I.    PRECISION LOCATION INFORMATION

### A.    Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from May 19, 2023 through July 1, 2023, at 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency.

### B.    Information to Be Seized by the United States

All information described above in Part I, Section A that constitutes evidence of violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm); 922(d) (knowingly giving a firearm to a felon); 922(k) (knowingly possessing/manufacturing a short-

barreled rifle); and 932 (knowingly purchasing or conspiring to purchase any firearm for a prohibited person) involving **DENNIS LATOUR** and **JENNIFER KEEGAN**.

## II. CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.      All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.      Length of service;

3.      All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4.      Subscriber information available for any originating telephone number;

5.      Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      an engineering map showing all cell site tower locations, sectors and orientations;

(i)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(j)     historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(k)     Time Difference of Arrival (TDOA), and,

(l)     Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

## III.   PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.     Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c. IP addresses of any websites or other servers to which the subject cellular telephone connected;

d. Source and destination telephone numbers and email addresses;

e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.      The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including

enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency, and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.      Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber

or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency, and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION OF          )
THE UNITED STATES OF AMERICA FOR A          )
WARRANT TO OBTAIN LOCATION                  )
INFORMATION, INCLUDING PRECISION            )     No. 4:23 MJ 8130 SRW
LOCATION INFORMATION; SUBSCRIBER            )
AND  TRANSACTIONAL RECORDS; CELL            )     **FILED UNDER SEAL**
SITE INFORMATION; AND FOR A PEN             )
REGISTER AND TRAP AND TRACE                 )
DEVICES.  (314) 303-8034                    )

**REPORT AND RETURN
REGARDING INITIAL WARRANT**

**Date and Time Warrant
Sent to Service Provider:**        _____
                                   Date:                    Time:

**Date and Time First Began
Monitoring Phone Location:**       _____
                                   Date:                    Time:


**Date and Time Terminated
Monitoring Phone Location:**       _____
                                   Date:                    Time:

The present warrant was obtained pursuant to Title 18, United States Code, Section 2703(c)(1)(A). Pursuant to Title 18, United States Code, Section 2703(c)(3), notice to the subscriber or customer is not required.

**CERTIFICATION**

I declare under penalty of perjury that this Report is correct and was returned along with the original warrant(s) to the designated judge.


_____
DATE                                    Brock Gale
                                        SA/ATF